**IN THE UNITED STATES DISCTRICT COURT
FOR THE TENTH CIRCUIT IN KANSAS**

| | | |
|---|---|---|
| N. CHENEY<br>808 Atchison St.<br>Atchison, KS 66022 | )<br>)<br>)<br>) | |
| **Plaintiff,** | )<br>) | Case No. |
| v. | )<br>)<br>) | **JURY TRIAL DEMANDED** |
| ROKAL, INC. D/B/A DAIRY QUEEN<br>412 S. 10th St.<br>Atchison, KS 66002 | )<br>)<br>)<br>)<br>) | |
| **Defendant.** | ) | |

**COMPLAINT**

**I. Preliminary Statement**

1. COMES NOW, Plaintiff, N. Cheney, by and through her attorneys of record, Kevin Baldwin, Eric Vernon, Sylvia Hernandez and Robin Koogler of Baldwin & Vernon, and brings this cause of action against Defendant Rokal, Inc. d/b/a Dairy Queen, hereinafter referred to as "Defendant Company." This action seeks declaratory, injunctive and equitable relief, actual, compensatory and punitive damages, and costs and attorneys' fees may be awarded pursuant to 42 USC §2000e-5(k) and Federal Rules of Civil Procedure 54, for Defendant's conduct and actions taken against Plaintiff.

**II. Jurisdiction**

2. This action arises under Title VII of the Civil Rights Act of 1964 (Title VII), 42 USC §2000e et seq. (as amended), and the Civil Rights Act of 1991, 42 U.S.C. §1981a, and the Age Discrimination in Employment Act (ADEA) 29 U.S.C. §621, 29 CFR part 1625 & 1626, et seq., and the Americans with Disabilities Act of 1990 ("ADA"), as amended by the ADA Amendment Act of 2008 ("ADAAA") 42 USCA §12101 et seq.

3. Jurisdiction is invoked pursuant to 28 USC §1343 (4), 42 USC §2000e-5 (f), and 28 U.S.C. 1331.  A Right-to-sue letter was issued by the Equal Employment Opportunity Commission (EEOC) on February 9, 2021. The Right To Sue Letter, including a copy of Plaintiff's original charge of discrimination filed with the EEOC, is attached hereto as exhibit 1 and is hereby incorporated as if fully set forth herein.

4. Declaratory, injunctive, and equitable relief is sought pursuant to 28 USC §2201, §2202, 42 USC §1981a.

5. Costs and attorney's fees may be awarded pursuant to 42 USC §2000e-5(k) and the Federal Rules of Civil Procedure 54 and are requested by Plaintiff.

6. Plaintiff is alleging claims of employment discrimination and retaliation under Title VII of the Civil Rights Act of 1964 (Title VII), the Age Discrimination in Employment Act (ADEA), and the Americans with Disabilities Act of 1990 ("ADA"), as amended by the ADA Amendment Act of 2008 ("ADAAA"), for discrimination based upon race, age, perceived disability and retaliation.

7. The Plaintiff, based upon reasonable belief at this time absent discovery, indicates that the amount of compensatory and/or special damages in controversy is in excess of $25,000.00; in addition, Plaintiff seeks declaratory, injunctive and equitable relief, as well as punitive damages.

**III. Venue**

4. This action properly lies United States Federal Court for the District of Kansas, pursuant to 29 USC §1391(b), because the claim arose in this judicial district, and pursuant to 42 USC §2000e-5(f)(3) and because unlawful employment practices were committed in this judicial district.

**IV. Parties**

5. Plaintiff is a resident of the United States residing at 808 Atchison St. Atchison, KS 66002.

6. Defendant Rokal, Inc. d/b/a Dairy Queen, hereinafter referred as "Defendant Company," is an employer engaged in an industry affecting commerce, and, upon information and belief, employs more than 100 regular employees. Defendant Company is a corporation, (containing within its charter the requisite authority to sue and be sued), and does business in this judicial district, doing business at various locations located within Atchison County, Kansas, at relevant times referred to herein, and specifically at 412 S 10th St. Atchison, KS 66002.  Defendant Company is an employer within the meaning of 42 USC § 2000e *et seq*., 42 USC § 1981a *et seq*.

7. Prior to filing this Complaint for Damages, Plaintiff sought administrative relief through the Equal Employment Opportunity Commission to no avail and exhausted all required administrative procedures prior to filing this Petition for Damages.

**V. Facts Common to All Counts**

8. Plaintiff, Natalie Cheney, is a 22-year-old female, and was employed by Defendant Company for 2 years.

9. On or about Thursday, April 30, 2020, Plaintiff was woken by her boyfriend, Jonathan Carr and her sister, Adrienne Studdard.

10. They were asking Plaintiff if she remembered when her niece's birthday was.

11. Plaintiff responded that it was Christmas when it is really December 15th. Shortly after asking this question, I was escorted to the Atchison Kansas Emergency Room, where Plaintiff was told she had had a grand mal seizure.

12. An hour or two after being released, Plaintiff went to Defendant Company, her place of work, to turn in her doctor's note and get something to eat.

3

13. When Plaintiff returned home, she had a few bites of her meal and then laid down on the couch to take a nap.

14. The next thing Plaintiff knew, she was being loaded up into the back of an ambulance.

15. Plaintiff was told that she had had another grand mal seizure and that her lips had turned blue.

16. Plaintiff was taken back to Atchison Emergency Room.

17. Plaintiff was then transferred to Mosaic in Saint Joe, MO for overnight observation.

18. On or about May 1, 2020, Plaintiff's neurologist, Dr. Myers told her that her EEG and MRI appeared normal except that her thyroid was not producing enough on its own and that her cerebellum is 6 millimeters lower than normal.

19. Dr. Myers also told Plaintiff that she could go back to work after May 8, 2020, and that she would provide a doctor's note.

20. Plaintiff was discharged at 1:19PM.

21. When Plaintiff got back to Atchison, she took the doctor's note to Defendant Company and went home.

22. On or about May 7, 2020, Plaintiff messaged her coworker/manager, Sylvia Hunt, and asked for a picture of the schedule.

23. Sylvia responded that she did not have one but that it was in the "Crew" app.

24. She went on to inform Plaintiff that she was scheduled to work May 8th at 5PM and then at 11AM on Saturday May 9th.

25. Plaintiff responded that she would not be back until the 9th per her doctor's note.

26. Sylvia responded, "ok."

27. On or about May 8, 2020, at 11:35AM, Sylvia messaged, that she had had CJ (general manager) look at Plaintiff's doctor's note and that it said that Plaintiff could return that night and that Plaintiff needed to be there by 5PM.

28. Plaintiff responded that she thought it had said the 9th based on what the doctor had told her and that she likely would not be back by 5PM.

29. Plaintiff asked if she could find someone to cover her shift and Sylvia responded, "idk CJ wants you to be here."

30. Plaintiff said, "ok, then I will be late."

31. Sylvia said that Plaintiff could call and talk to CJ but that they were already short-handed.

32. Plaintiff attempted to call Defendant Company around 1:11PM to talk to CJ but no one answered so Plaintiff sent the message exchange between herself and Sylvia to CJ via the Crew app.

33. CJ messaged Plaintiff back saying, "your note clearly states you may return to work on May 8 so you will have to be here it is your responsibility to be ready to work."

34. Plaintiff then said she would be late because her ride couldn't come to pick her up until 5PM.

35. When Plaintiff got to town, she got ready for work and got to work 2 hours late.

36. At the end of her shift, Plaintiff asked her manager, Sara Razo, for her check.

37. Sarah handed Plaintiff her check and had her sign her write-up for being 2 hours late.

38. Plaintiff asked how many write-ups before getting fired and Sara said that this was supposed to be her final write-up culminating in termination, but she wasn't sure what CJ wanted to do.

39. That next morning, May 9, 2020, Plaintiff went to work at 11AM, shortly after that, around noon, Plaintiff started to feel light-headed, dizzy, and her vision started to go blurry.

40. Plaintiff wasn't sure what was happening so she went to the bathroom and splashed water over her face, then Plaintiff talked to a manager, Cindy, and told her what was going on and asked if she could call her sisters, she said to go to the restroom to call them.

41. Plaintiff called her sister Kayla Labarbera and her sister-in-law Terran Dozier came and had Plaintiff sit down and tell them what was going on.

42. They had Plaintiff call her neurologists nurse and explained what was going on and the nurse said she was going to talk to the neurologist and call back.

43. At that time, Plaintiff's coworker, Charles Hughes came up and asked what was going on and Plaintiff told him to ask Cindy.

44. Then, CJ came up and rudely asked what was going on and asked if Plaintiff was on break, Plaintiff told her no and explained what was going on, she just walked back to the drive thru.

45. Charles then came up and told Plaintiff that she could clock out.

46. After Plaintiff got her stuff, she and her sisters left.

47. The neurologist then called back and explained that Plaintiff had had a petit mal seizure and to increase her dose of Keppra from 1000mg to 1500mg. Plaintiff was also advised not to go back to work until she saw her primary care physician.

48. Plaintiff was going to see her primary care physician on Monday May 11, 2020.

49. Plaintiff's sister Kayla called CJ at Defendant Company and relayed the message that Plaintiff was not to return to work. CJ told Kayla that Plaintiff was being taken off the schedule until her medical problems were taken care of.

50. On or about Monday, May 11, 2020, Plaintiff went to her doctor's appointment with Norma Green, at 3PM, and was told that Saturday had been a "break-through" seizure.

51. After Plaintiff's appointment, she went to Defendant Company to drop off her doctor's note and inform CJ that she could return to work on May 17, 2020 if there was no seizure activity.

52. CJ responded okay and that Plaintiff would not be able to return until June 9, 2020 as they were placing her on a 30-day probation and that they would keep her file, so that she could reapply because they don't have time to take care of her medical issues when they are busy.

53. Plaintiff asked if she was fired for sure and CJ responded that she was.

54. Plaintiff has experienced, is now experiencing, and will continue to experience into the indefinite future, garden variety emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses as a direct result of Defendant Company's conduct.

55. Plaintiff has suffered and will continue to suffer future pecuniary losses as a direct result of Defendant Company's conduct.

56. Defendant Company and its managers and other employees actively engaged in discrimination against Plaintiff with malice or in reckless indifference to her right to be free from such discrimination under the MHRA.

**VI. Causes of Action**

**COUNT I**

**DISCRIMINATION BASED UPON DISABILITY/PERCEIVED/REGARDED AS DISABELED AGAINST DEFENDANT COMPANY**

57. Plaintiff hereby incorporates and re-alleges all previously alleged Paragraphs as if fully set forth herein.

58. At the time of the unlawful employment actions, Plaintiff was an individual with a

7

disability and, as such, was a member of the protected group under §213 *et seq.*, R.S.MO.

59. Defendant Company perceived Plaintiff as being disabled, and that perception was a motivating factor in the decision to terminate Plaintiff.

60. At all times alleged herein, Plaintiff was an individual with a disability and was capable of performing the essential functions of his job with or without reasonable accommodations.

61. At the time these actions were taken by Defendant Company, Defendant Company knew these actions were unlawful and that they were done with an evil motive and/or reckless indifference to the rights of Plaintiff to be free from such discrimination.

62. Defendant Company's actions were unlawful employment practices in violation of the MHRA.

63. Plaintiff has been damaged by Defendant Company's unlawful employment actions.

## COUNT II

## RETALIATION
## AGAINST DEFENDANT COMPANY

64. Plaintiff hereby incorporates and re-alleges all previously alleged Paragraphs as if fully set forth herein.

65. Plaintiff hereby alleges claims of retaliation against Defendant Company.

66. Defendant Company's actions, as noted above, constituted retaliation against Plaintiff in violation of the MHRA.

67. Plaintiff's actions of complaining of what he believed to be acts in violation of the Missouri Human Rights Act as set forth herein was a motivating factor in the Defendant Company's decision to retaliate against him by treating him differently, subjecting him to a hostile work environment, subjecting him to a heightened level of scrutiny, setting him up to fail, and/or terminating him from his employment with Defendant Company.

68. At the time these actions were taken, Defendant Company knew that their actions were unlawful, and Defendant Company's actions were undertaken maliciously and/or in reckless disregard for Plaintiff's right to be free from discrimination.

69. Defendant Company's actions were outrageous because of their evil motive or reckless indifference to the rights of the Plaintiff when they engaged in acts of retaliation against the Plaintiff that culminated in his termination.

70. Plaintiff has been damaged by Defendant Company's unlawful employment actions in violation of the MHRA.

## VII. Prayer for Relief

71. Wherefore, Plaintiff prays that this Court:

    a. declare the conduct engaged in by Defendant Company to be in violation of Plaintiff's rights;

    b. enjoin Defendant Rokal, Inc. d/b/a Dairy Queen, and its managers/supervisors from engaging in such conduct;

    c. restore Plaintiff to her rightful position with Rokal, Inc. d/b/a Dairy Queen or, in lieu of reinstatement, order front salary and benefits for the period remaining until normal retirement;

    d. award Plaintiff equitable relief of back salary and fringe benefits up to the date of reinstatement and prejudgment interest for that entire period or front salary and benefits accrual;

    e. award Plaintiff compensatory, punitive and liquidated damages against Defendant Company;

    f. award Plaintiff damages for emotional pain and suffering;

  g. award Plaintiff her costs and attorneys' fees; and

  h. grant such other relief as it may deem just and proper.

## DEMAND FOR A JURY TRIAL

Plaintiff demands trial by jury on all issues triable by a jury in this complaint.

      Respectfully submitted,

  By: /s/ *Robin Koogler*
    Kevin Baldwin, KS Bar No. #18637
    Eric Vernon, KS Bar No. #21358
    Sylvia Hernandez, KS Bar No. #78914
    Robin Koogler, KS Bar No. #78915
    **BALDWIN & VERNON**
    108 S Pleasant St.
    Independence, MO 64050
    Tel: (816) 842-1102
    Fax (816) 842-1104
    Kevin@bvalaw.net
    Eric@bvalaw.net
    Sylvia@bvalaw.net
    Robin@bvalaw.net
    ATTORNEYS FOR PLAINTIFF